```
                                 :
FOYELL D. OWENS,                 :
                                 :     Civ. A. No. 11-6663 (NLH)(AMD)
               Plaintiff,        :
                                 :
          v.                     :     OPINION
                                 :
AMERICAN HARDWARE MUTUAL INS.    :
CO., et al.,                     :
                                 :
               Defendants.       :
                                 :
```

**APPEARANCES:**

STEPHEN M. TATONETTI
DUBOIS, SHEEHAN, HAMILTON, & LEVIN
511 COOPER STREET
CAMDEN, NJ 08102

     On behalf of plaintiff

STEPHEN R. DUMSER
SWARTZ CAMPELL, LLC
1300 ROUTE 73
BLOM COURT, SUITE 101
MT. LAUREL, NJ 08054

     On behalf of defendants

**HILLMAN**, District Judge

     This case concerns plaintiff's claims that the defendant insurance company, American Hardware Mutual Insurance Company, is equitably estopped from denying his entitlement to Underinsured Motorist Insurance ("UIM") coverage and, if not, whether he is entitled to coverage under a policy issued to his employer. Presently before the Court are the parties' cross-motions for

summary judgment.[1]  For the reasons expressed below, plaintiff's motion will be denied, and American Hardware's motion will be granted.

## BACKGROUND & DISCUSSION

Plaintiff, Foyell D. Owens, was assigned a cargo van to drive to his job assignments repairing and adding accessories to forklifts for Delaware Valley Lift Truck, Inc. ("DVLT").  In the mornings, he called DVLT from home in Mount Laurel, New Jersey for his job assignments for the day and drove the van to the job sites. At the end of the work day, he would drive immediately home, or to DVLT in Bensalem, Pennsylvania, for supplies and then home.

On October 29, 2007, after driving the work van to his home, he took the work van out again around 5:00pm.[2]  About fifteen

---

[1] Earlier in this case, plaintiff, Foyell D. Owens, filed a motion for summary judgment.  In considering that motion, the Court noted that plaintiff had briefed New Jersey law and in its opposition, defendant, American Hardware Mutual Insurance Company, briefed Pennsylvania law.  The Court also noted that the parties did not comply with Local Rule 56.1 requiring the moving party to provide a statement of undisputed facts and a corresponding response from the opposing party.  Accordingly, the Court denied plaintiff's motion for summary judgment.  The present motions comply with Local Rule 56.1 and both parties have supplied a comprehensive choice of law analysis to support the application of either New Jersey or Pennsylvania law.

[2] Although prior motion briefing represented that plaintiff was using the van to pick up his daughter from school, it is not included in either parties' statement of undisputed facts in support of their current cross-motions.  The relevance of the nature of plaintiff's driving the van at that time is discussed below.

minutes later, plaintiff was involved in an automobile accident caused by Imran Khan, who was driving a car owned by Mohammed Ali Hasan. Plaintiff suffered serious bodily injuries, including to his lower back, which required him to undergo a lumbar laminectomy with installation of hardware in his spine.

On October 7, 2009, plaintiff filed suit against Khan in New Jersey Superior Court, Law Division, Burlington County. The car Khan was driving was insured by Allstate Insurance Company with a policy providing $50,000 in liability coverage. The DVLT work van was insured by defendant American Hardware Mutual Insurance Company, which provided $500,000 in Pennsylvania underinsured motorist coverage. On March 4, 2010, plaintiff's counsel sent American Hardware a letter asking whether it would waive its subrogation rights and permit plaintiff to accept Allstate's offer of the $50,000 policy limits to settle plaintiff's case against Khan.[3] On March 24, 2010, American Hardware agreed, and plaintiff

---

[3] With regard to UIM benefits, the New Jersey courts have instructed the following procedure, called Longworth notice:

> As a matter of future conduct, an insured receiving an acceptable settlement offer from the tortfeasor should notify his UIM carrier. The carrier may then promptly offer its insured that sum in exchange for assignment to it by the insured of the claim against the tortfeasor. While promptness is to be ultimately decided by the circumstances, 30 days should be regarded as the presumptive time period if the insured notices his carrier prior to assignment of a trial date. In any event, an insured who has not received a response from his carrier and who is in doubt as to whether acceptance

executed a release of liability for his claims against Khan in consideration of the $50,000 settlement.

According to plaintiff, his damages far exceeded $50,000. Plaintiff, however, claims that he accepted the $50,000 from Allstate in settlement of his case against Khan because American Hardware had previously confirmed in June 2009 that the DVLT van policy provided $500,000 in UIM benefits. After dismissing his case with prejudice against Khan, plaintiff then presented a claim to American Hardware for UIM benefits. To date, American Hardware has not administered plaintiff's UIM benefits claim.

Plaintiff filed the instant suit against American Hardware alleging that the UIM policy requires that his claim be arbitrated, but American Hardware has refused to go to arbitration. Plaintiff alleges that American Hardware is equitably estopped from refusing to arbitrate his UIM claim because he settled his case against Khan, and accepted a fraction of his damages, based on the representation by American Hardware that up to $500,000 was

---

of the tortfeasor's offer will impair his UIM rights may seek an immediate declaratory ruling from the trial court on order to show cause on such notice as is consistent with the circumstances. We further hold that UIM carriers may, if they choose, honor demands from their insureds to proceed to arbitration of the UIM claim prior to disposition of the claim against the tortfeasor.

Rutgers Cas. Ins. Co. v. Vassas, 652 A.2d 162, 166 (N.J. 1995) (citing Longworth v. Van Houten, 538 A.2d 414 (N.J. Super. App. Div. 1988)).

available to him through the UIM policy.  Plaintiff seeks judgment
in his favor on his claim that he is entitled to UIM coverage, and
to compel American Hardware to arbitrate the amount of his claim.

American Hardware has opposed plaintiff's motion, and cross-
moved for summary judgment, arguing: (1) Pennsylvania law applies
to the interpretation of the UIM policy; (2) the policy contains an
exclusion to coverage for, "Anyone using a vehicle without a
reasonable belief that the person is entitled to do so"; (3) when
plaintiff was hired, he had signed a document acknowledging that
the van was not to be used for personal use; (4) he was involved in
the accident while using the van for a personal use; (5) the policy
exclusion therefore applies; (6) it did not know about the
implication of the non-permissive use exclusion when it informed
plaintiff's counsel of the availability of UIM benefits;(7) because
plaintiff knew of the non-personal use, but American Hardware did
not, at the time plaintiff relinquished his claims against Khan,
plaintiff cannot claim that equity compels American Hardware to
provide coverage under the UIM policy; and (8) plaintiff has not
been prejudiced by releasing his claims against Khan because both
Khan and the vehicle owner, Hasan, are judgment proof.

In reply, plaintiff argues that American Hardware is incorrect
that Pennsylvania law applies, and New Jersey law is controlling.
Plaintiff also contends that regardless of how the van was being
used at the time of the accident, equitable estoppel principles bar

5

American Hardware from refusing to arbitrate his UIM claim.

**DISCUSSION**

### A. Subject matter jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiff is a citizen of New Jersey, and defendants' citizenship is as follows: American Hardware Mutual Insurance Company is an Ohio corporation with a principal place of business in Minnetonka, Minnesota; Motorists Commercial Mutual Insurance Company (the new name of American Hardware) is an Ohio corporation with its principal place of business in Minnesota; The Motorists Insurance Group (of which American Hardware/Motorists Commercial is an affiliate) is an Ohio corporation with its principal place of business in Columbus, Ohio.

### B. Standard for summary judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). If review of cross-motions for summary judgment reveals no genuine

issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

## C. Analysis

As a federal court sitting in diversity jurisdiction, this Court must apply the law of the state in which it sits, including the choice of law rules of the forum state. The Court must therefore look to New Jersey's choice of law rules to determine whether a New Jersey court would apply the law of New Jersey or Pennsylvania when interpreting this Pennsylvania insurance contract. Aetna Sur. and Cas. Co. v. Sacchetti, 956 F. Supp. 1163, 1168 (D.N.J. 1996) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Generally, in interpreting insurance contracts, New Jersey courts will apply "the law of the place of the contract . . . unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield." Sacchetti, 956 F. Supp. at 1168 (quoting State Farm Mutual Automobile Insur. Co. v. Simmons Estate, 84 N.J. 28, 417 A.2d 488, 493 (N.J. 1980)).

American Hardware presents what appears to be a very straightforward argument. Succinctly stated, American Hardware argues that the policy explicitly excludes coverage for accidents that occurred during a non-permissible use, plaintiff knew he was

driving the van for personal use, which was not permitted by his employer, and thus he is not entitled to coverage. Because the place of contracting is Pennsylvania, American Hardware contends that Pennsylvania law therefore applies to the interpretation of the contract. American Hardware further contends that even if the court compares Pennsylvania and New Jersey law, there is no conflict, however, because the policy exclusion against covering an impermissible use would be enforced in either state. Moreover, American Hardware argues that the principles of equity would weigh in favor of American Hardware in either state because in order for equitable estoppel to apply, plaintiff must show detrimental reliance under the law in both states. American Hardware contends that plaintiff cannot do so because Khan is judgment proof - that is, even if it was inequitable for American Hardware to renege on its assurances that plaintiff would be entitled to the UIM benefits if he settled his claim against Khan, plaintiff could not have recovered any more from Khan if he had not settled that claim. American Hardware also argues that for equitable estoppel to apply, plaintiff must have clean hands, and because he knew he was using the van impermissibly but did not inform American Hardware, he is not entitled to the UIM benefits.

In contrast, plaintiff argues that under New Jersey law, which should apply here, American Hardware must be estoped from reneging on its representation that UIM benefits were available to him by

virtue of American Hardware's consent to settlement of plaintiff's suit against Khan. Plaintiff argues that American Hardware's failure to be aware of its own policy exclusion and investigate the nature of the accident cannot be absolved by the fortuitous post hoc determination that Khan was apparently "judgement proof."

The Court finds, as argued by plaintiff, that the starting point in the choice of law analysis in this case should be the determination of which state's equitable estoppel principles govern American Hardware's refusal to arbitrate plaintiff's claim for UIM benefits, and not whether the policy exclusion is enforceable under New Jersey or Pennsylvania law to completely deny his claim. Even accepting as true that plaintiff knew he was using the van for personal use, and such use was prohibited by his employer,[4] the Court does not first consider which state's law to apply to the application of policy exclusion for a non-permissible use. This is because American Hardware did not deny plaintiff's UIM claim based on that exclusion when he presented his claim. If from the outset American Hardware had denied plaintiff's claim because he did not

_____

[4] Plaintiff contests that his use of the van at the time of the accident was not permitted by his employer. Plaintiff further contests that the form, which purportedly confirms plaintiff's understanding that he was not to use the van for personal use, demonstrates his knowledge of the restriction and evidences that his use of the van at the time of the accident was knowingly in violation of company policy. These disputed facts are discussed in more detail below in the Court's analysis of American Hardware's denial of plaintiff's UIM benefits claims based on the policy exclusion.

have a "reasonable belief" that he was permitted to use the van in the way he did at the time of the accident, the Court would have to first consider the propriety of American Hardware's application of that exclusion and whether to apply New Jersey or Pennsylvania law to make that determination. American Hardware did not, however, refuse to arbitrate plaintiff's claim for UIM benefits on that basis until many months after it informed plaintiff's counsel that the UIM benefits were available to plaintiff, and many months after plaintiff settled with Khan.[5]

Thus, it must first be determined what law to apply to plaintiff's claim that American Hardware has acted inequitably. An analysis of the case law in New Jersey and Pennsylvania reveals that no real conflict exists, and that the analysis of the facts in this case yields the same result under either state's law.[6]

In New Jersey and Pennsylvania, the seminal principle in the interpretation of an insurance contract is that it be given its

_____

[5] American Hardware argues that it simply informed plaintiff's counsel that UIM benefits were available under the policy, but it did not promise that it would give plaintiff any of the UIM benefits available. The import of American Hardware's representations are discussed below.

[6] When there is no conflict between the law, the law of the forum state would apply. Rowe v. Hoffman-LaRoche, Inc., 917 A.2d 767, 771 (N.J. 2007) ("If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue."). Although the Court concludes that New Jersey and Pennsylvania law is not conflicting in the area of equitable estoppel under the facts of this case, the Court will still discuss Pennsylvania law in order to fully explain the lack of conflict.

ordinary meaning, but in cases of ambiguity, the policy must be construed against the insurer and in favor of coverage for the insured, because insurance contracts are essentially contracts of adhesion. Passaic Valley Sewerage Com'rs v. St. Paul Fire and Marine Ins. Co., 21 A.3d 1151, 1158 (N.J. 2011) (citing Doto v. Russo, 659 A.2d 1371, 1376-77 (N.J. 1995)); State Farm Fire & Cas. Co. v. PECO, 54 A.3d 921, 935 (Pa. Super. 2012) (citing cases). Moreover, in both states, an insurance company is precluded from acting in a manner that misleads the insured, Griggs v. Bertram, 443 A.2d 163, 168-69 (N.J. 1982); Pfeiffer v. Grocers Mut. Ins. Co., 379 A.2d 118, 121 (Pa. Super. 1977), and the presumption of prejudice to the insured is presumed in certain circumstances, Barrett v. New Jersey Mfrs. Ins. Co., 685 A.2d 975, 977-78 (N.J. Super. Ct. App. Div. 1996) (citations omitted) (explaining that even though "'[t]he strongest and most frequent situation giving rise to such an estoppel is one wherein a carrier undertakes to defend a lawsuit based upon a claim against its insured,' an insurer also may be estopped by other forms of conduct acknowledging coverage upon which an insured justifiably relies"); W. O. Hickok Mfg. Co. v. Unigard Mut. Ins. Co., 15 Pa. D. & C. 3d 593, 595, 1979 WL 327, 1 (Pa. Com. Pl. 1979), cited in Treadways LLC v. Travelers Indem. Co., 467 Fed. Appx. 143, 148 (3d Cir. 2012) (explaining that Pennsylvania follows "the general rule that where an insurance company which knows or should have known of a defense

of nonliability under the policy assumes the defense of a claim and conducts the matter to final judgment, it is estopped from thereafter raising the defense of noncoverage"). Thus, in both states, an insured may seek that an insurance company be equitably estopped from denying insurance coverage because the insurer acted to mislead, harm, or otherwise prejudice the insured.

In this case, plaintiff and American Hardware do not dispute these tenets of New Jersey and Pennsylvania law governing an insurance company's duty to its insured. They diverge, however, on (1) whether it was American Hardware who mislead plaintiff or plaintiff who mislead American Hardware, (2) whether an insured must show detrimental reliance under New Jersey or Pennsylvania law, and (3) whether plaintiff suffered any detriment because of American Hardware's actions.

With regard to the first point, American Hardware argues that plaintiff knew he was driving the van in a non-permissible manner, and his attorney should have asked to examine the insurance policy prior to settling plaintiff's claim against Khan. If he had done so, American Hardware contends that plaintiff would have been aware of the exclusion to coverage for "Anyone using a vehicle without a reasonable belief that the person is entitled to do so," and not be surprised about American Hardware's ultimate decision to deny plaintiff's claim to UIM benefits.

As a primary matter, and as noted above, plaintiff disputes

that he believed he was driving the van "impermissibly." But, as also noted above, even if it is accepted as true that plaintiff was driving the van "without a reasonable belief" he was permitted to do so, American Hardware's placement of responsibility on plaintiff and his counsel to discover a policy exclusion to UIM benefit coverage is inequitable under the circumstances, for several reasons.

First, unlike most of the insurance policies at issue in the case law, plaintiff did not enter into the contract with American Hardware, as the insurance coverage was procured by plaintiff's employer, DVLT, and plaintiff did not have any opportunity to read the policy and know of its exclusions prior to coverage being provided to him. Second, as the drafter of the insurance policy, American Hardware is presumed to know its own policy terms. O'Malley v. Continental Ins. Co., 451 A.2d 542, 544 (Pa. Super. 1982) (citation omitted) ("Insurers are not unduly burdened by a requirement that they explain the exclusions of their policies to insureds so that the insured can make an informed decision either to assume the excluded risks or to obtain additional insurance to protect against them."); Boritz v. New Jersey Mfrs. Ins. Co., 968 A.2d 1223, 1229 (N.J. Super. App. Div. 2009) ("In weighing the merits of an injured party's Longworth request to settle with a tortfeasor, a carrier is, or should be, aware of its coverage limits."). American Hardware has not presented any case law that

13

suggests a plaintiff whose employer procures insurance for his work vehicle is required to seek out and know the policy's exclusions to coverage.

Third, for over three years between the time of the accident and plaintiff's <u>Longworth</u> notice, American Hardware paid plaintiff "personal injury protection," or "PIP," benefits to plaintiff, and in order to do so, American Hardware was provided with all the details of plaintiff's accident, including GPS records that showed the accident occurred at 5:15pm when plaintiff did not have a customer assignment.  (Def. Statement of Undisputed Facts ¶ 31.) Even though payment of PIP benefits to plaintiff does not automatically entitle plaintiff to UIM,[7] it demonstrates American Hardware's ability to confirm the parameters of its policy with DVLT and to know of the circumstances of plaintiff's accident.

Fourth, the purpose of plaintiff's <u>Longworth</u> notice was to provide American Hardware with the opportunity to investigate his claim in order to decide whether to "offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or,

---

[7] <u>See</u> N.J.S.A. 39:6A-4 ("[E]very standard automobile liability insurance policy issued or renewed on or after the effective date of P.L.1998, c. 21 (C.39:6A-1.1 et al.) shall contain personal injury protection benefits for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured . . . .").

allow the insured to settle." Rutgers Cas. Ins. Co. v. Vassas, 652
A.2d 162, 168 (N.J. 1995). Thus, when plaintiff's counsel sent
American Hardware a letter on March 4, 2010 asking whether it would
waive its subrogation rights and permit plaintiff to accept
Allstate's offer of the $50,000 policy limits to settle plaintiff's
case against Khan, plaintiff fulfilled his duty under Longworth.[8]
It was then American Hardware's obligation "to weigh the relative
merits of allowing its insured to settle and paying the difference
in UIM benefits compared with paying its insured the settlement
offer plus UIM benefits and itself maintaining a subrogation action
against the tortfeasor." Rutgers Cas. Ins. Co., 652 A.2d at 168.
Presumably after weighing its options, twenty days later on March
24, 2010, American Hardware agreed to permit plaintiff to settle
with Khan and waive its subrogation rights. When providing its
consent to plaintiff to settle his claim against Khan, American
Hardware did not inform plaintiff that it intended to invoke the
policy exclusion to coverage and deny plaintiff UIM coverage.

Based on these facts, the Court cannot find that plaintiff
acted inequitably toward American Hardware. Instead, these

---

[8] See Rutgers Cas. Ins. Co. v. Vassas, 652 A.2d 162, 168 (N.J.
1995) ("[W]hen an insured under an automobile insurance policy
providing UIM benefits is involved in an accident and undertakes
legal action against the tortfeasor, the insured must notify the
UIM insurer of that action. If, during the pendency of the claim,
the tortfeasor's insurance coverage proves insufficient to satisfy
the insured's damages, then the insured should again notify the UIM
insurer of that fact.").

undisputed facts suggest that American Hardware did not fully investigate plaintiff's entitlement to UIM benefits prior to providing its consent to plaintiff to settle and dismiss with prejudice his case against the tortfeasor Khan. Thus, these undisputed facts suggest that American Hardware misled plaintiff and induced him to settle his claim against Khan because American Hardware led him to believe that he was not precluded from UIM benefits.

Moving on to the second point of contention between the parties, regardless of any apparent mishandling of plaintiff's UIM claim, American Hardware argues that plaintiff cannot maintain his estoppel claim against it because plaintiff was not actually prejudiced by American Hardware's actions. American Hardware argues that because Khan is "judgment proof," plaintiff could not have recovered anything more from Khan had plaintiff not dismissed his suit against him. Therefore, American Hardware contends that plaintiff's reliance on American Hardware's consent to settlement was not to plaintiff's detriment.

The Court does not find that Pennsylvania and New Jersey law are in conflict on the premise that an insured must have suffered prejudice in some way in order to estop the insurer from disclaiming coverage. See, e.g., Turner v. Federal Ins. Co., 1995 WL 33096, *2 (E.D. Pa. 1995) (citing Pfeiffer, 379 A.2d at 121; Wasilko, 232 A.2d at 63) (explaining that in order to establish

that an insurer should be estopped from denying coverage for a claim, a plaintiff must establish that he relied upon the company's actions to his detriment); Miller v. Miller, 478 A.2d 351, 355 (N.J. 1984) ("To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment."). Moreover, the Court does not find that Boritz v. New Jersey Mfrs. Ins. Co., 968 A.2d 1223, 1227 (N.J. Super. App. Div. 2009) diverges from this basic premise or represents a conflict between Pennsylvania and New Jersey law.

In Bortiz, plaintiff Linda Bortiz was a passenger in a car driven by Sally Iacono, who had an insurance policy with defendant New Jersey Manufacturers Insurance Company ("NJM"). The driver of the car who rear-ended Iacono's vehicle had an insurance policy with GEICO, and that policy provided $15,000 in liability coverage. Due to the fact that $15,000 did not cover Bortiz's injuries, Bortiz's attorney notified NJM that she would be filing a claim with NJM for UIM benefits under Iacono's policy, which provided up to $100,000 in UIM benefits. Although Bortiz also had her own automobile insurance policy with GEICO that had $25,000 UIM coverage, NJM confirmed that the NJM policy was primary to Bortiz's

GEICO policy, but NJM also asked Boritz's counsel to send NJM the declarations page of Bortiz's GEICO policy. Two months later, in December 2006, pursuant to Bortiz's <u>Longworth</u> notice, NJM consented for Bortiz to settle with the other driver for the $15,000 policy limits.

For four months thereafter, from December 2006 through April 2007, Bortiz's counsel negotiated with NJM for UIM benefits, with her last demand being $75,000, and NJM's last counteroffer being $32,023. In May 2007, NJM finally received the declarations page from Bortiz's GEICO policy it requested in October 2006, and NJM determined that Bortiz was only entitled to $10,000 of the $100,000 UIM because of a "step-down" provision in the NJM policy. The "step-down" provision limited the UIM benefits to a person not named on the policy to the maximum of the UIM benefits available to that person's own insurance policy. Because GEICO provided $25,000 in UIM to Boritz under her own policy, and she had already recovered $15,000 from the tortfeasor, NJM limited its UIM coverage to Bortiz to $10,000, to provide Bortiz with a total recovery of $25,000, which was equal to her own UIM policy limits.

Bortiz filed suit against NJM, arguing that NJM should be estopped from enforcing the step-down provision. The lower courts sided with NJM, but the New Jersey Supreme Court agreed with Bortiz, for two reasons. First, the court found that NJM was estopped because it confirmed to Bortiz's counsel that the UIM

18

coverage limit was $100,000, and plaintiff was entitled to rely on
that representation to forego the opportunity to seek redress from
the tortfeasor personally.  <u>Bortiz</u>, 968 A.2d at 1229.  For the
second reason, the court explained:

> The second reason involves a carrier's duty of good
> faith. Although plaintiff does not assert that NJM
> intentionally misled her to believe that the UIM limits
> were $100,000, an insurer's duty of good faith is more
> than simply an obligation not to act in bad faith. . . .
> When an insurance carrier receives a <u>Longworth</u> request to
> settle, good faith requires the carrier to advise the
> injured party of the potential setoff in the policy
> afforded by the step-down provision before the injured
> party settles with the tortfeasor. . . . In weighing the
> merits of an injured party's <u>Longworth</u> request to settle
> with a tortfeasor, a carrier is, or should be, aware of
> its coverage limits.  When a step-down clause is
> implicated, the carrier, like NJM here, should know that
> its UIM coverage limits are constrained by that
> provision.  And just as coverage limits are important to
> the carrier, they are perhaps even more critical to an
> injured party's decision whether to settle for the
> tortfeasor's policy limits in exchange for releasing the
> tortfeasor from liability. From an injured party's
> perspective, knowing the UIM policy limits may have as
> significant an influence upon that party's decision to
> settle as knowing whether the insurance carrier provides
> UIM coverage in the first instance.

<u>Id.</u>

The court then addressed NJM's argument that it was unaware
that the step-down provision would be triggered until it received
Boritz's insurance declaration sheet, which it had requested from
Bortiz's counsel on October 3, 2006.  The court rejected that
argument, noting that NJM had requested the declarations page of
Bortiz's policy to verify her chosen tort threshold, not to make a
determination of whether to invoke the step-down provision.  <u>Id.</u> at

1230. More importantly, the court found that NJM was in a position

to inform Bortiz that the $100,000 UIM limit could be reduced

depending upon whether she had her own UIM coverage, and had Boritz

received that information, she would have known that the maximum

available UIM coverage would be $25,000, less the tortfeasor's

policy limits, and would have been able to make an informed

decision whether to release the tortfeasor in return for the

tortfeasor's $15,000 policy.  Id.  The court then concluded the UIM

limit available to Boritz was $85,000 (the $100,000 policy limit

less the $15,000 the injured party received from the tortfeasor),

subject to any other defenses that would otherwise be available to

NJM.  Id.

Nothing in the Bortiz case changes the basic principle of the

equitable estoppel doctrine that a party must have suffered some

prejudice after reasonably relying upon another party's

representations.  If anything, it supports the principle relying,

as it does in part, on the notion that the insured was giving

something up (a higher potential recovery from the tortfeasor) by

relying on the UIM carrier's policy limits.

Thus, having resolved the first two points of contention

between the parties - finding that it was American Hardware who

mislead plaintiff, and that an insured must show prejudice under

both New Jersey or Pennsylvania law - the Court now must turn to

the third, which is whether plaintiff actually suffered any

prejudice because of American Hardware's actions.

As noted several times above, American Hardware's main argument is that because Khan is "judgment proof," plaintiff could not have recovered anything more than the policy limit from Khan had plaintiff not dismissed his suit against him, and therefore, plaintiff's reliance on American Hardware's consent to settlement was not to plaintiff's detriment. The Court finds, under the circumstances of this case, American Hardware's argument to be persuasive, and that plaintiff has not met his burden of demonstrating that he has suffered a detriment by relying upon American Hardware's representation that UIM benefits were available to him.

Reiterated in <u>Bortiz</u> and long recognized in Pennsylvania, "'the utmost fair dealing should characterize the transactions between an insurance company and the insured.'" <u>Berg v. Nationwide Mut. Ins. Co., Inc.</u>, 44 A.3d 1164, 1170 (Pa. Super. 2012) (quoting <u>Dercoli v. Pennsylvania Nat. Mut. Ins. Co.</u>, 554 A.2d 906, 909 (Pa. 1989))(other citations omitted) (explaining that the insurance company has a duty to deal with its insured on a fair and frank basis, and at all times, to act in good faith); <u>see also</u> <u>Bortiz</u>, 968 A.2d at 1229 (citing <u>Am. Home Assurance Co. v. Hermann's Warehouse Corp.</u>, 563 A.2d 444 (N.J. 1989)) (other citations omitted) ("The duty of good faith 'is a broad concept. Whether it was adhered to by the carrier must depend upon the circumstances of

the particular case . . . .  The boundaries of good faith will become compressed in favor of the insured depending on those circumstances.'").  Acting fairly and frankly is to recognize that an insured will rely upon the confirmation of the availability of insurance coverage.  <u>See</u> <u>id.</u>

In this case, as discussed above, American Hardware did not act as a model of fairness and frankness to plaintiff.  Plaintiff provided American Hardware with notice that he was seeking UIM benefits under the insurance policy that American Hardware issued to plaintiff's employer, and American Hardware was in the best position to know the terms of the policy, including any exclusions to coverage.  During its investigatory period in response to plaintiff's <u>Longworth</u> notice, American Hardware could have, and arguably should have, reviewed the terms of the policy, and reviewed the circumstances of plaintiff's accident.[9]  American Hardware, however, never informed plaintiff or his counsel of that possibility.

It was not until three months later, when a DVLT representative contacted American Hardware to inquire about why American Hardware declined to renew DVLT's insurance policy, that

_____

[9] There is no evidence in the record that American Hardware knew that it would disclaim coverage based on the non-permissible use exclusion at the time it consented to plaintiff's settlement of his case against Khan, or that it intentionally refrained from informing plaintiff and his counsel about the exclusion.  If such evidence were in the record, it would obviously be indicative that American Hardware acted in bad faith.

American Hardware finally recognized the non-permissible use exclusion, and considered the circumstances of plaintiff's accident.  The nature of the accident and the existence of the exclusion had been knowable to American Hardware since the day of the accident, and at least three years later when plaintiff submitted his <u>Longworth</u> notice.  American Hardware's lack of diligence in considering the policy terms and investigating the nature of the accident do not weigh in American Hardware's favor.

Ultimately, however, plaintiff has not demonstrated that even if American Hardware had acted with the upmost diligence and candor in response to plaintiff's <u>Longworth</u> notice, what harm or prejudice he suffered; what position, action, legal strategy, or course of conduct he abandoned or did not take; what tangible or intangible benefit he lost or failed to achieve; or what expenditure of time or money he lost or needlessly wasted.  In short, Plaintiff appears to be in the same exact position vis-a-vis Khan regardless of what he was or was not told by American Hardware.

The dispositive factor in this case, and the one that tips the estoppel issue in favor of American Hardware, is that despite American Hardware's failure to inform plaintiff that UIM benefits might not be available to plaintiff because of a policy exclusion, and despite plaintiff's release of his claims against Khan, plaintiff has not shown any true detriment.  Plaintiff has provided no evidence of how his current position would be any different if

he had not settled with Khan.[10]  It is plaintiff's burden to

establish detrimental reliance, and plaintiff has failed to do so.

The purpose of the principle of equitable estoppel is to provide a

remedy for someone who suffers actual harm, whether tangible - such

as a monetary loss - or intangible - such as the loss of a right to

---

[10] A review of the Pennsylvania case law cited by American Hardware does not support a different finding.  In Pennsylvania, as in New Jersey, see American Handling Equipment, Inc. v. T. C. Moffatt & Co., 445 A.2d 428, 433 (N.J. Super. App. Div. 1982) ("It is to be noted that in Griggs, in the cases cited in the above quotation, and in the cases heretofore referred to in this opinion, there was in each case an underlying policy.  Estoppel was in each case used to prevent the operation of an exclusion or to extend coverage. Here there never was a policy."), the doctrine of estoppel may be invoked against an insurer with respect to an existing insurance contract, but it cannot create an insurance contract where none existed.  AJT Properties, LLC v. Lexington Ins. Co., 2012 WL 7563170, 10 (Pa. Com. Pl. 2012) (citing Antone v. New Amsterdam Casualty Co., 6 A.2d 566,568 (Pa. 1939)) (other citations omitted). Accordingly, in Turner v. Federal Ins. Co., 1995 WL 33096 (E.D. Pa. 1995), Nationwide Mut. Fire Ins. Co. v. Salkin, 163 F. Supp. 2d 512, 517 (E.D. Pa. 2001), and Wasilko v. Home Mut. Cas. Co., 232 A.2d 60, 61 (Pa. Super. 1967), all cited by American Hardware, the courts did not find that the insurance companies were estopped from denying coverage because in each of these cases the plaintiff could never have been considered an insured under the policies.  See Turner, 1995 WL 33096, at *1 (insurer denied UIM benefits to plaintiff because during the investigatory period the insurer determined that the plaintiff did not meet the definition of a covered family member under his father's policy); Salkin, 163 F. Supp. 2d. at 516 (insurer denied UIM benefits under a policy issued to Herbert Salkin Realty, Inc. to the son of the company's owner Herbert Salkin, because he could not be considered an insured under the policy); Wasilko, 232 A.2d at 61 (facts at trial revealed that the tortfeasor was not a covered party under the insurance policy that the plaintiffs contended should provide coverage for their injuries).  Importantly, these courts also noted that the plaintiffs did not rely to their detriment on the insurance companies' actions because they did not produce evidence that they could have recovered more from the tortfeasors.  Turner, 1995 WL 33096, at *2; Salkin, 163 F. Supp. 2d. at 517-18; Wasilko, 232 A.2d at 63.

control a defense - because of reliance on the representations of another.  The purpose of the requirement of harm as an necessary element is to prevent the doctrine from swinging too far that other way and creating a contract where none existed.  Absent detrimental reliance, American Hardware is not estopped from enforcing the policy exclusion to deny plaintiff's UIM benefits claim.

However, it must still be determined if American Hardware properly invoked the policy exclusion to deny plaintiff UIM benefits.[11]  The Court finds that American Hardware has sufficiently supported the propriety of its denial of UIM benefits to plaintiff based on the policy exclusion.

The Pennsylvania Underinsured Motorists Coverage endorsement excludes coverage for "Anyone using a vehicle without a reasonable belief that the person is entitled to do so."  (Def. Ex. A, Docket No. 37-1 at 75.)  American Hardware argues that when plaintiff was hired, he signed a document acknowledging that the van was not to be used for personal use, and that he was involved in the accident while using the van for a personal use.  Plaintiff contests that his use of the van at the time of the accident was not permitted by his employer.  Plaintiff further argues that the form, which

_____

[11] According to the UIM endorsement, although the determination as to the amount of UIM benefits an insured is entitled to may be arbitrated, whether the policy affords an insured UIM coverage at all may not be arbitrated.  (See Def. Ex. A, Docket No. 37-1 at 76 ("[D]isputes concerning coverage under this endorsement may not be arbitrated.")).

purportedly confirms his understanding that he was not to use the van for personal use, does not demonstrate that he knew of the restriction or evidences that his use of the van at the time of the accident was knowingly in violation of company policy.

As a threshold matter, the interpretation of an insurance contract is a question of law.  In both Pennsylvania and New Jersey, insurance policy terms are given their ordinary meaning. If a term is ambiguous, it must be construed in favor of the insured, and it must also comport with the reasonable expectations of the insured.  A court, however, cannot distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.  Spece v. Erie Ins. Group, 850 A.2d 679, 682 (Pa. Super. 2004) (quoting Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n, 517 A.2d 910, 913 (Pa. 1986)); Simonetti v. Selective Ins. Co., 859 A.2d 694, 698 (N.J. Super. Ct. App. Div. 2004) (citations omitted) ("A genuine ambiguity exists when the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.").  Where an insurer relies on a policy exclusion as the basis for its denial of coverage, the insurer has asserted an affirmative defense, and bears the burden of proving such defense.  Spece v. Erie Ins. Group, 850 A.2d at 682 (quoting Madison Construction Co. v. Harleysville Mutual Ins. Co., 735 A.2d 100, 106 (Pa. 1999)); Flomerfelt v. Cardiello, 997 A.2d 991, 997 (N.J. 2010) (explaining that the burden is on the insurer

to bring the case within the exclusion).

Here, the Court finds that American Hardware has satisfied its burden of proving that the exclusion is applicable, and that plaintiff has failed to sufficiently refute American Hardware's proofs. First, the exclusion itself is not ambiguous.[12] It does not strain the construction of the policy exclusion to ask the simple question of whether the person driving the insured vehicle had, or did not have, a reasonable belief the person was entitled to do so.

American Hardware has provided sufficient proofs, which plaintiff has not refuted, that plaintiff could not have had a "reasonable belief" that he was permitted to use the van at the time of the accident. Although plaintiff testified at his deposition that at the time of the accident he was not using his van for a personal activity, he cannot recall why he was driving the van at that time on that day, and plaintiff does not dispute that the van was to be used for work-purposes only. (Def. Ex. B, Docket No. 37-2 at 20, 21-23, 41, 42.) It is also undisputed that at the time of the accident, plaintiff was not driving his van to

---

[12] This is not a case where the Plaintiff held reasonable expectations as to coverage based on the language of the contract or was misled by any confusion or ambiguity in the language chosen to describe the policy, its coverage, or its exclusions. As pointed out above, plaintiff did not enter into the insurance policy with American Hardware. Plaintiff could not have had any reasonable expectations regarding, or been misled by, a policy he never saw.

or from any scheduled work-related customer appointment. (Def. Ex. I, Docket No. 37-2 at 89.)

Although plaintiff contends that he and DVLT had a tacit understanding about the permissibility of plaintiff's daily use of the van, when American Hardware issued the UIM policy to DVLT it explicitly exempted from coverage any use of the van that the driver reasonably understood to be impermissible as directed by DVLT. DVLT directed its drivers in writing not to use the van for personal use. Thus, a DVLT driver understood that using the van for anything other than work-related activities would not be reasonable. This is what American Hardware contracted to insure. American Hardware did not contract with DVLT to insure plaintiff's amorphous non-personal, non-work use. American Hardware has demonstrated that at the time of the accident, plaintiff did not have a scheduled customer appointment, and he knew that the van should not be used for personal use.

Plaintiff's only rebuttal to American Hardware's proofs is a simple denial, without more, that he was not using the van for a personal errand. All the record evidence, however, demonstrates otherwise. To simply deny remembering any other details about why he was driving the van at the time of the accident is insufficient to create a disputed issue of material fact. To successfully refute American Hardware's position that plaintiff did not have a "reasonable belief" that he was permitted to use the van at the

time of the accident, plaintiff is required to offer more than his self-serving expression of his belief that the use of the van was "reasonable." See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (explaining that in order to defeat summary judgment, a party must do more than just rest upon mere allegations, general denials, or vague statements); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 574-75 (D.N.J. 2003) (citations omitted) ("[I]n order to defeat a properly supported motion for summary judgment, a plaintiff cannot simply rely on 'vague,' 'self-serving' statements which are 'unsupported by specific facts in the record.'"). Accordingly, because the Court finds that the UIM "reasonable belief" exclusion is not ambiguous, and that American Hardware has demonstrated that plaintiff's use of the van at the time of the accident falls within the UIM exclusion, American Hardware's denial of plaintiff's claim for UIM coverage based on the exclusion was not improper.

## **CONCLUSION**

Principles of equitable estoppel do not bar defendant's invocation of a policy exclusion because plaintiff has failed to offer sufficient proof that he relied to his detriment on defendant's consent to release plaintiff's claims against the tortfeasor. Moreover, American Hardware properly denied plaintiff's claim for UIM benefits based on that policy exclusion.

Plaintiff has failed to raise a material issue of fact that his use of the DVLT van at the time of the accident was based on a reasonable belief he was permitted to use the vehicle as he did. Consequently, plaintiff's motion for summary judgment shall be denied, and defendant's cross-motion for summary judgment shall be granted.

An appropriate Order will be entered.


Date___December 30, 2013___                    ___s/ Noel L. Hillman_____
At Camden, New Jersey                          NOEL L. HILLMAN, U.S.D.J.